**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bureau Veritas Technical Assessments LLC, *et al.*, | No. CV-25-02339-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Blake Brosa, *et al.*, | |
| Defendants. | |

At issue is Plaintiffs Bureau Veritas Technical Assessments, LLC ("BVTA") and Bureau Veritas North America, Inc. ("BVNA") Motion for Clarification and/or Reconsideration of 12/01/2025 Order [ECF 71] and Memorandum of Points and Authorities ("Motion") (Doc. 72, Mot.), to which Defendant Blake Brosa filed a court-ordered Response (Doc. 76, Resp.) and Plaintiffs replied (Doc. 82, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant in part and deny in part the Motion.

## I.    BACKGROUND[1]

Plaintiffs provide project management services, building assessment, and code compliance for multi-site customers. (Doc. 1, Compl., ¶¶ 24–26.) Defendant began working for Plaintiffs in July 2015 as their Senior Vice President of Sales. (*Id.* ¶ 37.) In October 2021, Defendant was promoted to the Executive Vice President of Sales (*Id.* ¶ 38.)

---
[1] The Court recounts the facts as alleged in Plaintiffs' original Complaint and procedural history that are relevant to the dismissal of claims of which Plaintiffs now seek reconsideration in their Motion.

As a part of his promotion, Defendant entered a Confidentiality, Non-Competition, Non-Solicitation, and Assignment of Rights Agreement ("Brosa Agreement"). (*Id*. ¶¶ 41–48; Doc. 1-2.) The Brosa Agreement contained four covenants: (1) confidentiality; (2) non-competition; (3) non-solicitation; and (4) non-recruitment. In November 2024, Defendant allegedly extracted several files from his work computer to a flash drive and sent customer communications and documents to his personal email account. (*Id*. ¶¶ 68–82.) In December 2024, Defendant terminated his employment with Plaintiffs and began working for Defendant Apex Imaging Services Incorporated as its Director of Business Development for Multi-Site Retail. (*Id*. ¶¶ 66–67.)

Plaintiffs sued Defendant on the following claims at issue in the pending Motion: breach of the confidentiality covenant in the Brosa Agreement (Count Three) and breach of the non-solicitation and non-recruitment covenants in the Brosa Agreement (Count Four). (*Id*. ¶¶ 133–63.) Defendant filed his Motion to Dismiss and supporting memorandum (Doc. 25, MTD), to which Plaintiffs responded (Doc. 36, MTD Resp.) and Defendant replied (Doc. 50, MTD Reply). In its Order dated December 1, 2025 ("Prior Order") (Doc. 71), the Court dismissed Count Three and the portion of Count Four only pertaining to the non-solicitation covenant without leave to amend. Plaintiffs timely move this Court to clarify or reconsider its dismissal of Counts Three and Four.

## II.   LEGAL STANDARD

Plaintiffs suggest that the Court should clarify its prior Order under Federal Rule of Civil Procedure 60, which permits it to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a[n] . . . order." Fed. R. Civ. P. 60(a) (*See* Mot. at 6.) Plaintiffs, however, principally argue that the Court erred in finding the two covenants of the Brosa Agreement unenforceable, which amounts to more than a mere clerical mistake, oversight, or omission.

Accordingly, the Court will apply the legal standard delineating its authority to reconsider rulings that have not resulted in a final judgment under Rule 54(b). *Sonoma Cty. Ass'n of Retired Emples. v. Sonoma Cty.*, No. C 09-4432 CW, 2015 U.S. Dist. LEXIS

53081, *9 (N.D. Cal. Apr. 22, 2015). "The District of Arizona adopted Local Rule 7.2(g) to implement and supplement Rule 54(b), and, thus, a litigant seeking relief under Rule 54(b) must comply with Local Rule 7.2(g)'s requirements." *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2022 U.S. Dist. LEXIS 55593, at *11 (D. Ariz. Mar. 28, 2022) (internal quotation marks and citation omitted). LRCiv 7.2(g)(1) sets forth in detail the standard for a motion for reconsideration:

> The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence. Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order. No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order. Failure to comply with this subsection may be grounds for denial of the motion.

### III. ANALYSIS

#### A. Count Three

In bringing Count Three, Plaintiffs alleged that Defendant breached Section 1(a) and Section 1(e) of the Brosa Agreement. (Compl. ¶¶ 138–39.) Section 1(a) prohibits an employee's use of Plaintiffs' confidential information, while Section 1(e) mandates the return of Plaintiffs' property, including confidential information, upon that employee's termination. In dismissing Count Three in its entirety, the Court found that Section 1(a)'s definition of confidential information was unenforceable and incurable.

Plaintiffs argue that the Court erred when it "interpreted a clause in Section 1(a)'s definition of 'Confidential Information' to include publicly available information." (Mot. at 9.) Section 1(a) reads, in relevant part, as follows:

> . . . All documents or information, in whatever form or medium, regarding the business or affairs of the Company and its affiliates . . . shall all be deemed 'Confidential Information,' except to the extent the same shall have been lawfully and without breach of obligation made available to the general public without restriction, or that Employee can prove, by documentary evidence, was previously known to Employee prior to Employee's employment . . .

(Doc. 1-2 ¶ 1(a) (emphasis omitted).) According to Plaintiffs, it was improper for the Court to interpret the exclusionary clause, "except to the extent the same shall have been lawfully and without breach of obligation made available to the general public without restriction," as including public information on a *sua sponte* basis. (Mot. at 9–10.)

First, the Court reached its conclusion based on the parties' briefing on the issue, not *sua sponte*. Defendant argued that Section 1(a) included "any and all information learned during employment, whether confidential or otherwise, it would also include general know-how, and other large swaths of non-confidential information no business has a legitimate business interest from restricting." (MTD at 4.) Defendant pointed the Court to *Orca Communs. Unlimited, Ltd. Liab. Co. v. Noder*, 314 P.3d 89 (Ariz. Ct. App. 2013) ("*Orca I*"), *de-published in part on other grounds*, 236 Ariz. 180 (Ariz. 2014) ("*Orca II*"), as "directly on point and instructive." (MTD at 5.)

Plaintiffs responded that Section 1(a)'s definition of confidential information was properly tempered by the exclusionary clause because it excludes information that was made public. (MTD Resp. at 11.) Plaintiffs distinguished Section 1(a) from the confidentiality covenant in *Orca I* on the grounds that the latter "extended to publicly-available and non-confidential information." (*Id.*) Plaintiffs pointed to other case law that likewise held that a confidentiality agreement cannot deem public information confidential. (*Id.* at 12.) *See Williams & Lake LLC v. Genesis Systems LLC*, 2017 U.S. Dist. LEXIS 211434, at *29–31 (D. Ariz. Sep. 12, 2017); *see also Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 968 (D. Ariz. 2015). It is from Plaintiffs' own arguments and both

- 4 -

parties' case citations that the Court was drawn to the exclusionary clause of Section 1(a) and to ask whether it properly excluded public information like Plaintiffs professed it did.

Second, the exclusionary clause plainly defines confidential information to exclude only that which was (1) "lawfully and without breach of obligation made available to the general public without restriction," or (2) "that Employee can prove, by documentary evidence, was previously known to Employee prior to Employee's employment." (Doc. 1-2 ¶ 1(a).) The first portion of that provision is not qualified by any one person or actor, while the second portion is. The selective use of a qualifier is of consequence in a contract, and the lack of a qualifier within the first portion plainly means that it is not limited by *who* makes the information public lawfully and without breach of obligation to Plaintiffs. The express purpose of Section 1(a) supports this conclusion, which is to "prevent dissemination of Confidential Information *beyond* those employees entrusted with such information." (*Id*. (emphasis added).) The language and intent of the confidentiality covenant clearly prohibits Defendant's use of Plaintiffs' information that has entered the public domain. *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 294 (Ariz. 2016) ("[Courts] construe provisions in such contracts according to their plain and ordinary meaning."); *Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050 (Ct. App. 2009) ("In order to determine what the parties intended, we first consider the plain meaning of the words in the context of the contract as a whole.").

Third, Plaintiffs argue that the Court erred because the exclusionary clause in Section 1(a) is "ambiguous as to whether it only applies to Brosa, *or* to other BVTA employees." (Mot. at 9.) Plaintiffs misinterpret the Court's Prior Order, which found that the exclusionary clause could include information made public by others aside from Defendant himself due to the lack of a written qualifier, discussed *supra*, thereby rendering it overbroad under *Orca I*. It has not been suggested, by the parties or the Court, that the Brosa Agreement applies to or is enforceable against anyone other than Defendant. There is no ambiguity.

. . .

1 Fourth, Plaintiffs argue that the Court erred by failing to sever six words from the exclusionary clause: "lawfully and without breach of obligation." (*Id*. at 11.) This is the first time Plaintiffs identify any particular terms that could be severed to save the covenant of unreasonableness. Defendant does not disagree that severance of those six words would cure the covenant. Rather, Defendant responds that "Plaintiffs could have presented this targeted severance theory earlier but did not." (Resp. at 4.) But Plaintiffs did raise the general issue of severance in their responsive memorandum (MTD Resp. at 16 n.4; Reply at 3), albeit without pinpointing the six words that they presently identify. Upon Plaintiffs' Motion, the Court now considers which words should be severed to bring the covenant within compliance of the law—an issue that was introduced in the original motion practice but not fully and completely briefed until now. The Court agrees with Plaintiffs that those six words are the precise ones that offend *Orca I*'s proscription against restricting an employee's use of public information and severing them will render the covenant reasonable.

Defendant's remaining argument in his original Motion to Dismiss briefing, that Section 1(a) is overbroad because it includes all information he learned during his employment (MTD at 4; MTD Reply at 5–6), is unavailing because the exclusionary clause now properly eliminates information made public or that which he knew prior to employment from the scope of confidentiality. *See Orca I*, 314 P.3d. at 95 (holding that an employer cannot deem all information that an employee learns through employment as confidential if that information includes that which is publicly available).

Next, Plaintiffs argue that the confidentiality covenant, now rendered enforceable by the severance of six words, does not fail for lack of temporal or geographic restrictions. (MTD Resp. at 12–13; Mot. at 12.) Defendant failed to brief this issue previously and presently; rather, he contends, as he did before, that the confidentiality covenant is still construed as a non-compete covenant that fails for lack of limitations. (Resp. at 4.)

While it is true that overbroad confidentiality covenants are construed as a non-compete covenant, *Orca I*, 314 P.3d at 95, the covenant here is no longer overbroad.

1  Therefore, Arizona case law merely requires that confidentiality covenants are reasonably
2  tailored to protect the employer's legitimate interest in its confidential information. *BioD,*
3  *LLC v. Amnio Tech., LLC*, No. 2:13-cv-1670-HRH, 2014 U.S. Dist. LEXIS 199784, at *16
4  (D. Ariz. July 22, 2014); *Orca I*, 314 P.3d at 95. Under the Restatement (Second) of
5  Contracts, "[t]he extent of the restraint is a critical factor in determining its reasonableness
6  . . . What limits as to activity, geographical area, and time are appropriate in a particular
7  case depends on all the circumstances." Section 188(d); *Cornell v. Desert Fin. Credit*
8  *Union*, 524 P.3d 1133, 1139 (Ariz. 2023) (following the Restatement). "While a true trade
9  secret is entitled to protection of indefinite duration," the same may not be true for
10 information that is generally known and accessible to competitors. *Amex Distrib. Co. v.*
11 *Mascari*, 724 P.2d 596, 603 (Ariz. Ct. App. 1986).

12       Plaintiffs allege that the information protected by the confidentiality covenant is, at
13 least in part, a trade secret. (Compl. ¶¶ 137, 140, 141.) Assuming those allegations are
14 true—which the Court must do at the motion to dismiss stage—the confidentiality covenant
15 is not unreasonable because it lacks temporal limitations. *Amex*, 724 P.2d at 603. Plaintiffs
16 further allege that they conduct business on an international scale, and Defendant had
17 access to that information. (Compl. ¶¶ 11, 26, 40, 56, 102.) If true, then it is not
18 unreasonable that the confidentiality covenant is not tempered by space. At this stage,
19 Plaintiffs plead sufficient facts that the confidentiality covenant is necessary to protect their
20 legitimate interest in protecting confidential and trade secret information on a global scale,
21 and that is not outweighed by the public interest or Defendant's hardship because the
22 covenant now properly excludes information that is public or known to Defendant prior to
23 his employment with Plaintiffs.

24       The Court hereby severs the terms "lawfully and without breach of obligation" from
25 the confidentiality covenant of the Brosa Agreement and reinstates Count Three. The Court
26 need not resolve the remaining issues raised by Plaintiffs as they relate to Section 1(e),
27 which are rendered moot by the reinstatement of Count Three.
28 . . .

### B. Count Four

Finally, Plaintiffs move the Court to reconsider its dismissal of Count Four, which asserted breach of the non-solicitation covenant in the Brosa Agreement. Plaintiffs argue that the Court erred by failing to sever the words that Plaintiffs now identify for the first time. Plaintiffs propose severing "or prospective," "or who the Company or any affiliate solicited" and "contacted, called on, serviced, or" and leave the following:

> . . . Employee shall not directly or indirectly solicit business from or interfere with, or attempt to solicit business from or interfere with, any actual customer, service provider, vendor, or supplier of the Company or any affiliate of the Company with whom the Company or any affiliate did business within the eighteen (18) months prior to Employee's termination from employment with the Company, and (1) who or which Employee did business with, on behalf of the Company or any affiliate of the Company, during Employee's employment with the Company, or (2) about whom Employee received Confidential Information (collectively, "Customers") . . .

(Mot. at 13.) But even after severing the terms suggested by Plaintiffs, the covenant still includes customers who "did business" but who may have ended their business with Plaintiffs prior to Defendant's termination. *See Hilb, Rogal & Hamilton Co. v. McKinney*, 946 P.2d 464, 467 (Ariz. Ct. App. 1997) (holding that a non-solicitation covenant cannot prohibit solicitation of former customers). Further, the term "actual" customer does not mean the customer was "current," and the Court cannot add language to clarify that Plaintiffs meant to prohibit the solicitation of only its current customers at the time of Defendant's termination. *See Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1286 (Ariz. 1999). The Court could sever other language from the covenant, such as each instance of "did business," or "within the eighteen (18) months," but doing so does not ultimately cure the underlying impermissible prohibition of soliciting customers who no longer did business with Plaintiffs when Defendant ended his employment. Because the non-solicitation covenant is unenforceable and incurable, the Court did not err when it dismissed Count Four without leave to amend.

## IV. CONCLUSION

The Court will reinstate Count Three but finds no error in dismissing Count Four pertaining to the non-solicitation covenant without leave to amend. The Court notes that Plaintiffs have already filed their First Amended Complaint in accordance with the Prior Order. (*See* Doc. 74, FAC.) Therein, Plaintiffs retained Counts Three and Four as originally pled in their Complaint. (FAC ¶¶ 173–203.)[2]

No later than fourteen days from the date of this Order, Plaintiffs may file an amended complaint that amends the First Amended Complaint. The amended complaint shall retain Count Three as alleged but shall remove Count Four as it pertains to the non-solicitation covenant. Plaintiffs shall file a separate Notice of Filing Amended Complaint with an attached redlined copy showing the changes between the First Amended Complaint and the amendment. No new claims may be added to an amendment absent leave of court pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15.1.

**IT IS ORDERED** granting in part and denying in part Plaintiffs' Motion for Clarification and/or Reconsideration of 12/01/2025 Order [ECF 71] and Memorandum of Points and Authorities (Doc. 72.)

**IT IS FURTHER ORDERED** severing "lawfully and without breach of obligation" from Section 1(a) of the Confidentiality, Non-Competition, Non-Solicitation, and Assignment of Rights Agreement between Defendant Brosa and Plaintiffs (Doc. 1-2 ¶ 1(a)).

**IT IS FURTHER ORDERED** reinstating Count Three as alleged in Plaintiff's First Amended Complaint (Doc. 74).

**IT IS FURTHER ORDERED** that, no later than fourteen days from the date of this Order, Plaintiffs may file an amended complaint. The amended complaint shall retain Count Three as alleged in the First Amended Complaint but shall remove Count Four as it pertains to the non-solicitation covenant. Plaintiffs shall file a separate Notice of Filing Amended Complaint with an attached redlined copy showing the changes between the First Amended

---

[2] Defendant Apex has since moved to dismiss other claims (*see* Docs. 79–80) but reinstatement of Count Three will not affect that pending motion and briefing.

Complaint and the amendment. No new claims may be added to an amendment absent leave of court pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15.1.

Dated this 14th day of January, 2026.

Honorable John J. Tuchi
United States District Judge