**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bureau Veritas Technical Assessments LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Blake Brosa, *et al.*,<br><br>Defendants. | No. CV-25-02339-PHX-JJT<br><br>**ORDER** |

Before the Court is Defendant Apex Imaging Services, Inc's second Motion to Dismiss (Doc. 79) and memorandum (Doc. 80, Mem.) filed after Plaintiffs filed their First Amended Complaint (Doc. 74, FAC). Plaintiffs have since responded to the Motion (Doc. 85, Resp.), and Apex replied (Doc. 90, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## I.    BACKGROUND[1]

The Court has already chronicled the facts underlying this matter in its first Order granting the dismissal of claims against Apex. (Doc. 71.) In broad strokes, though, Plaintiffs allege that Apex is a competitor that provides similar services to the same pool of customers. Mr. Blake Brosa worked for Plaintiffs as a sales executive for many years, then began working for Apex in a similar role in December 2024. Mr. Brosa retained a work laptop issued by Plaintiffs even after he began working with Apex. When Plaintiffs finally retrieved the laptop, forensic examination of that laptop revealed that Mr. Brosa

---

[1] When referring to papers submitted by the parties, the Court cites to the page number as generated by the Electronic Court Filing system, not the parties' own page demarcation.

connected an external drive and copied data to that drive before and after his termination. This data, according to Plaintiffs, constituted their confidential information and trade secrets.

To the extent the facts underlying this matter have changed between the original pleading and the operative First Amended Complaint, that change was largely a result of the work of a third-party forensic consultant, Mr. Brian Halpin, who was appointed by the Court to analyze the external drive. (*See* Doc. 52; FAC ¶¶ 97–107.) As now alleged by Plaintiffs, Mr. Halpin's report demonstrates that Mr. Brosa copied 6,339 files, some of which included client contact and project information, pricing information, project revenue data, and emails, from his work laptop to an external drive. (*See* FAC ¶¶ 78–95.) Plaintiffs also now allege that Mr. Brosa modified at least 63 documents that contain confidential or trade secret information between December 10, 2024 and June 22, 2025 after Mr. Brosa began working for Apex. (FAC ¶ 10–102.) Additionally, most of the files located on the external drive had the "Last Accessed" date of June 23, 2025. (FAC ¶¶ 103–04.) Around this time, Mr. Brosa sent another employee of Plaintiffs, Ms. Lynell Grimes, information about an airline ticket, and soon thereafter Ms. Grimes began working for Apex. (FAC ¶¶ 5, 127, 244.) At some point, Apex submitted a competing proposal to a national retailer customer that undercut Plaintiffs' own proposal, thereby causing Plaintiffs to lose that customer's business. (FAC ¶¶ 16, 245.)

Plaintiffs reasserted the following claims against Apex: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 and the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. §§ 44-401–07; (2) tortious interference with a contract or expectancy; and (3) unfair competition. (FAC ¶¶ 134–72, 241–57.)

## II.     LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the

- 2 -

absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.    ANALYSIS

### A.    Counts One and Two: Misappropriation of Trade Secrets

Plaintiffs bring claims for trade secret misappropriation under both the federal DTSA (Count One) and its state law counterpart AUTSA (Count Two)[2] under theories of direct and vicarious liability. (FAC ¶¶ 134–71.)

---

[2] District courts analyze claims arising under the DTSA and AUTSA together because the elements are identical. *See Early Warning Servs. LLC v. Johnson*, No. CV-24-01587-PHX-SMB, 2025 U.S. Dist. LEXIS 89594, *4 (D. Ariz. May 12, 2025).

### 1. *Direct Liability*

For a trade secret misappropriation claim based on direct liability to survive a motion to dismiss, a plaintiff must sufficiently plead: "(1) that the plaintiff possessed a trade secret[;] (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)).

First, "plaintiffs must identify the trade secrets . . ." *Id.* at 658 (citation and internal quotation marks omitted). Trade secrets are defined broadly and include three components: "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.* at 657; *see also* 8 U.S.C. § 1839(3); A.R.S. § 44-401(4). Even though trade secrets are defined broadly, "[t]he plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *InteliClear*, 978 F.3d at 658 (citation modified).

Here, Plaintiffs allege three new categories of trade secrets: (1) quarterly sales plans; (2) key account reports; and (3) RFP proposals and customer contracts. (FAC ¶¶ 111–13.) Apex challenges whether the quarterly sales plans were alleged with particularity, but it does not address the other two categories of purported trade secrets. (Reply at 4–5; *see also* Mem. at 6.) Therefore, even if the quarterly sales plans are not trade secrets, it is not disputed at this stage that Plaintiffs sufficiently allege that their key account reports, RFP proposals, and customer contracts are. Accordingly, the Court will not dismiss the misappropriation claims on the account of failure to allege a trade secret.

Second, a plaintiff must sufficiently plead that a defendant misappropriated the trade secret. Misappropriation includes the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C § 1839(5); *see also* A.R.S. § 44-401(2). Improper means includes "theft, bribery,

misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." 18 U.S.C § 1839(6); A.R.S § 44-401(2).

As previously observed by the Court, while improper means include several kinds of conduct, "[m]ere possession of trade secrets by a departing employee is not sufficient to establish misappropriation or show injury." *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1207 (E.D. Cal. 2020). Rather, the purported misappropriation must extend beyond mere possession. *Id.* at 1207–08 (allegations that the defendant deployed a sales method claimed to be a trade secret were sufficient to plead misappropriation); *Early Warning Servs. LLC*, 2025 LEXIS 89594, at *12–13 (allegations that the defendant published previously unknown information without the plaintiff's consent were sufficient to plead misappropriation).

Plaintiffs allege, as they did before, that Apex is directly liable for misappropriation because it directed, knew of, or approved of Mr. Brosa and Mr. Tankersley's improper acquisition of Plaintiffs' trade secrets, and are using that information. (FAC ¶¶ 3, 5, 14, 107–09, 148.) Apex argues that Plaintiffs' theory of direct liability turns only on Mr. Brosa's conduct, but Plaintiffs fail to allege "a single fact show[ing] Apex knew of Blake Brosa downloading Plaintiffs' trade secrets onto his hard drive, that Apex was involved in the downloading or that Apex actually used Plaintiffs' trade secrets." (Mem. at 6–7.) Apex correctly observes, and the Court previously noted, that the fact Apex may have benefited from Mr. Brosa's possession or use of trade secrets is insufficient to plead that it is directly liable for misappropriating those trade secrets. (Mot. at 10–11; Doc. 71 at 10–11 (previous Order).) *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982–83 (D. Ariz. 2015) (allegations that a competitor benefitted from its employee using trade secrets in the course of employment is insufficient to allege misappropriation as to the competitor).

In response, Plaintiffs argue that Apex had reason to know that Mr. Brosa acquired trade secrets and was likely using them in his employment with Apex because Plaintiffs sent Apex a letter on December 23, 2024, shortly after Mr. Brosa quit. (FAC ¶ 96, Resp. at 9.) But Apex argues, and the Court agrees, that the letter merely apprises Apex of

- 5 -

Mr. Brosa's general post-employment obligation but does not identify whether Mr. Brosa obtained trade secrets or what those trade secrets were, so the letter is insufficient to demonstrate that Apex knew or should have known Mr. Brosa misappropriated trade secrets. (Reply at 2–3.) *See Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1187 (W.D. Wash. 2019) (allegation that a competitor received a general letter notifying it of its new employee's post-employment obligations to a former employer is insufficient to state that the competitor knew the employee misappropriated trade secrets).

Plaintiffs next argue that the Court can infer Apex knew of Mr. Brosa's misappropriation because part of his misconduct occurred while he was employed by Apex. Specifically, Plaintiffs allege that "Brosa could not have engaged in [] months' long unlawful use and copying of stolen trade secrets as Apex's top sales executive without Apex being aware of Brosa's unlawful activity and, directly or tacitly, approving of this misappropriation and benefiting from it." (FAC ¶ 14.)

Plaintiff cites several cases as legal support, but each is distinguishable. For instance, in *Elko Inc.* and *Joshua David Mellberg LLC*, the plaintiff company alleged specific facts supporting an inference that the defendant competitor entered an agreement with the plaintiff's employee to steal trade secrets. *See Elko, Inc. v. WTH Commer. Servs., LLC*, No. 3:22-cv-00015-MMD-CLB, 2023 U.S. Dist. LEXIS 167072, at *14–16 (D. Nev. Sep. 20, 2023) (alleging facts that a former employee wanted to "get even" with the plaintiff and conspired with a competitor to steal the plaintiff's trade secrets and target the plaintiff's customers using confidential information about them); *Joshua David Mellberg LLC v. Will*, No. CV-14-02025-TUC-CKJ, 2016 U.S. Dist. LEXIS 32414, at *17 (D. Ariz. Mar. 11, 2016) (alleging that former employees approached a competitor to use stolen trade secrets to launch similar services and start a new company). But here, Plaintiffs' allegations of an agreement between Mr. Brosa and Apex are conclusory at best and based solely on the fact that Mr. Brosa decided to work for Apex over Plaintiffs. (*See, e.g.*, FAC ¶¶ 3–4, 14, 107, 111–13, 145.)

. . .

In the other cases cited by Plaintiffs, there were specific allegations indicating that the competitor directly acquired or used the trade secrets itself. *See Mgmt. & Eng'g Techs. Int'l v. Info. Sys. Support*, 490 F. App'x 30, 32 (9th Cir. 2012) (affirming that evidence of an employee delivering a PowerPoint containing trade secret information to his new employer that was saved and later sold as an asset by the new employer was sufficient to support a jury's verdict); *Autodesk, Inc. v. Zwcad Software Co.*, No. 5:14-cv-01409-EJD, 2015 LX 43520, at *4–5, 8–10 (N.D. Cal. May 13, 2015) (noting allegations of a competitor's software producing the same unusual code errors as the plaintiff's software to suggest the competitor acquired the exact same software); *Novation Sols., Inc. v. Issuance Inc.*, No. 2:23-cv-00696-WLH-KSx, 2023 U.S. Dist. LEXIS 179181, at *41–43 (C.D. Cal. Aug. 16, 2023) (noting allegations of a competitor inducing the plaintiff to join a business venture to gain access to its trade secrets that were later used by the competitor). Here, Plaintiffs allege that "Defendants, including Apex, submitted a competing proposal . . . that included and/or was based upon . . . trade secret information . . . resulting in [Plaintiffs] losing this customer's business." (FAC ¶¶ 16, 245.) Even assuming the truth of that allegation, the Court cannot make the inferential leap urged by Plaintiffs that Apex should have known the information was a trade secret merely because they benefitted from it or employed Mr. Brosa.

In sum, Mr. Brosa's employment with Apex as a "top sales executive" or Apex's alleged benefit from Mr. Brosa's possession or use of trade secret information is insufficient to permit an inference that Apex knew or had reason to know of the misappropriation. *See, e.g.*, *Apple Inc. v. Rivos, Inc.*, No. 5:22-cv-02637-EJD, 2023 U.S. Dist. LEXIS 140628, at *25 (N.D. Cal. Aug. 11, 2023) ("[The competitor's] conduct in hiring and facilitating the departure of [the plaintiff's] employees to ([the competitor] does not amount to improper acquisition of [the plaintiff's] trade secrets."); *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020) (dismissing a misappropriation claim for want of specific facts supporting that a competitor instructed

the plaintiff's former employees to steal trade secrets). The Court must dismiss the misappropriation claim against Apex that arises under a theory of direct liability.

### 2.    *Vicarious Liability*

An employer can be held vicariously liable for its employee's misappropriation. *Bombardier Inc.*, 383 F. Supp. 3d at 1188 (denying the dismissal of a misappropriation claim where the plaintiff sufficiently alleged that a competitor was vicariously liable for its employee's misappropriation of trade secrets). When, as here, vicarious liability proceeds "[u]nder the *respondeat superior* doctrine, an employer can be held liable for the intentional torts that its employees committed within the scope of employment even if the employer did not authorize the employee to commit the tort. Courts can find vicarious liability so long as there is a causal nexus between the activity and the employee's work." *Id.* (citation modified).

While this theory was notably missing in the original pleading, Plaintiffs now allege sufficient facts to support Apex's purported vicarious liability that include a detailed chronology of Mr. Brosa accessing, modifying, and copying files while he was already working for Apex. (FAC ¶¶ 16, 98–04.) As alleged by Plaintiffs, that material would be relevant to Mr. Brosa's role as the Director of Business Development for Multi-Site Retail that involves "soliciting and servicing" customers (FAC ¶¶ 73, 111–13) and establishes a causal nexus between the alleged misconduct and work.

Apex cites to *Apple Inc. v. Rivos, Inc.*, 2023 U.S. Dist. LEXIS 140628, to suggest that Plaintiffs fail to state that Apex is vicariously liable for misappropriation. (Mem. at 10–11.) There, former employees of the plaintiff company allegedly copied confidential information before working for the defendant competitor in analogous roles. *Apple*, 2023 U.S. Dist. LEXIS 140628 at *5–6. The court dismissed claims for misappropriation against the defendant competitor because the employees were not working for the defendant at the time they acquired the plaintiff's information and mere possession of the trade secrets did not amount to misappropriation. *Id*. at *23–25. Notably, though, Plaintiffs point out that *Apple* is distinguishable in that Mr. Brosa accessed, modified, and copied material

containing Plaintiffs' trade secrets *while* employed by Apex. (Resp. at 14; *see also* FAC ¶¶ 99–104, 245.) This distinction is meaningful because vicarious liability under *respondeat superior* requires that an employee commits a tort within the scope of his employment, which is precisely what Plaintiffs allege here. *See* Restat. 3d of Agency § 2.04. (FAC ¶¶ 15, 149, 168.)

Apex next argues that Plaintiffs fail to allege Apex was "aware of the existence of any of the alleged trade secrets obtained by Brosa or Tankersley or any specifics as to how trade secret information has been used for Apex's benefit," and that is fatal to the vicarious liability theory. (Mem. at 11.) But Apex cites no authority that suggests vicarious liability based on *respondeat superior* requires an employer (Apex) to have knowledge of the underlying tort.

Finally, Apex argues that the conduct of Mr. Brosa while he worked for Apex does not amount to misappropriation, so Apex has nothing to be vicariously liable for. (Reply at 7.) But at the pleading stage, "it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used their trade secrets, given that Defendants are the only ones who possess such information." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 883 (N.D. Cal. 2018) (citation modified). That Mr. Brosa repeatedly accessed files containing Plaintiffs' trade secrets and copied them to another device in his possession is sufficient for this Court to infer that he "used" those files for the purpose of pleading a misappropriation claim Accordingly, Counts One and Two may proceed under a theory of vicarious liability as to Apex.

**B.    Count Eight: Tortious Interference with Contract or Expectancy**

To plead a claim for tortious interference with contractual relations, the plaintiff must allege the following: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferer, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 9 (Ariz. 2005).

Plaintiffs reassert their tortious interference claim against Apex based on the following theories: (1) interference with Plaintiffs' expectancies and contracts with current or prospective customers; and (2) inducing Plaintiffs' employees to materially breach their obligations to Plaintiffs that include (a) confidentiality; (b) non-recruitment of other employees; and (c) non-solicitation of customers. (FAC ¶¶ 243–44.)

Apex does not challenge Plaintiffs' claim as it relates to Apex's purported inducement of a breach of Plaintiffs' employees' confidentiality obligations despite Plaintiffs pointing out Apex's silence on this point. (Resp. at 15 n.9.) As for Plaintiffs, they appear to abandon their claim related to customer interference and material breach of non-solicitation obligations. (Resp. at 15 n.9.) Accordingly, the only dispute the Court must resolve is whether Plaintiffs sufficiently allege that Apex induced Plaintiffs' employees to materially breach their non-recruitment obligation owed to Plaintiffs. On this point, Plaintiffs allege that Mr. Brosa sent flight information to Ms. Grimes through his official Apex email, and Apex hired Ms. Grimes days later. (FAC ¶¶ 127, 244.)

Apex does not dispute that a contract existed between Mr. Brosa and Plaintiffs. It does, however, argue that Plaintiffs fail to allege that Apex knew of that contract. (Mem. at 11–12.) But the First Amended Complaint pointedly alleges that Apex knew of Mr. Brosa's contract because its CEO received a letter on December 23, 2024, from Plaintiffs regarding Mr. Brosa's contractual obligations. (FAC ¶¶ 96, 243.)  That letter predated Mr. Brosa's alleged recruitment of Ms. Grimes by almost six months, so it logically follows that Apex would have known of Mr. Brosa's contract and related obligations by the time the recruitment occurred.

Next, Apex argues that the allegation of Mr. Brosa emailing flight information to Ms. Grimes is not enough to state that Apex intentionally induced or caused Mr. Brosa to breach his non-recruitment obligation. But at this stage, it is enough. As alleged, the email signifies that Mr. Brosa engaged in coordinating Ms. Grimes's travel before she began working for Apex and used official Apex communication channels to do so. In using Apex resources (*i.e.*, e-mail) to purportedly conduct recruiting efforts in violation of his

obligation to Plaintiffs, the allegation that Apex was involved in that conduct crosses the line from implausible to plausible. Time will tell whether this email alone will be enough to meet Plaintiffs' ultimate burden of proof, but the claim should proceed at this stage if it is based on well-pled and plausible facts even if it "strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation modified).

Next, Apex argues that there are insufficient allegations of improper conduct. "Proof that an actor intentionally induced a breach of contract is not sufficient to establish that the actor's conduct was improper. Rather, there is a requirement that the interference be both intentional and improper." *NCWC Inc. v. CarGuard Admin. Inc.*, 635 F. Supp. 3d 815, 826 (D. Ariz. 2022) (citation modified). In Arizona, courts apply the standards established in the Second Restatement of Torts to tortious interference claims. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985), *superseded by statute on other grounds as stated in Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 693–94 (Ariz. App. 2007). Under the Restatement, where the interference arises in a business competition context, the interferer "does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other." Restat. 2d of Torts § 768; *NCWC Inc.*, 635 F. Supp. 3d at 826 (citation modified). As Apex recognized, this principle is known as the "competitive privilege." *NCWC Inc.*, 635 F. Supp. 3d at 826. (*See* Mem. at 15.)

But that is only half the applicable law. The Restatement also makes clear that competitive privilege "does not apply to inducement of breach of contract" where the interferer's "claim that his interference is not improper rests solely on the fact of competition and his purpose to advance his interest in that competition." Comment (h) to Restat. 2d of Torts § 768. In other words, that the interferer competes against another does not justify a knowing and intentional interference with legal obligations owed to that other

person. On this point, the Restatement—and Arizona courts—draw a distinction between contracts that are terminable at will, which create only a hope of future contractual obligation but no legal assurance of it, and contracts that are subject to a condition of time, which create a definite expectation of future contractual obligation. *See* Comment (h)–(i) to Restat. 2d of Torts § 768; *Ulan v. Vend-A-Coin, Inc.*, 558 P.2d 741, 745 (Ariz. App. 1976); *NCWC Inc.*, 635 F. Supp. 3d at 826. The former may be subject to the competitive privilege while the latter are not. *Ulan*, 558 P.2d at 745.

Here, Plaintiffs allege that Mr. Brosa owed them an obligation to refrain from recruiting Plaintiffs' employees for a one-year term after he quit working for them. (FAC ¶ 53.) Under the Restatement and Arizona law, Apex's supposed inducement of Mr. Brosa's breach of this timed obligation is not protected by the competitive privilege and is, therefore, "actionable even in the absence of malice and even where the motive is the self-interest of" Apex. *See NCWC Inc.*, 635 F. Supp. 3d at 826. At this stage at least, the competitive privilege does not exempt Apex from its allegedly improper conduct when it interfered with Mr. Brosa's performance of his contract with Plaintiffs.

Finally, Apex does not meaningfully dispute that Plaintiffs plead the damages element; instead, Apex argues that damages cannot be pled because the other elements of a tortious interference claim are not pled. (Mem. at 17.) But the Court has found otherwise, so Apex's challenge to the damages element fails.

In sum, the Court will not dismiss Count Eight with respect to the inducement of Mr. Brosa's breach of the non-recruitment clause or the confidentiality clause of his contract with Plaintiffs. However, because Plaintiffs appear to abandon their claim regarding Apex's alleged interference with Plaintiffs' customer relationships and inducement of Mr. Brosa's breach of the non-solicitation clause of his contract, the Court will dismiss those portions of Count Eight.

### C.    Count Nine: Unfair Competition

Plaintiffs bring a common law tort claim for unfair competition against all Defendants and additionally assert that Apex is vicariously liable for Mr. Brosa's and

Mr. Tankersley's misappropriation. (FAC ¶¶ 248–57.) Unfair competition claims are based on principles of equity and encompass several tort theories including, as relevant here, misappropriation.[3] *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. App. 1998).

Apex argues that Plaintiffs' unfair competition claim is preempted under the AUTSA. This argument is familiar to the Court, as it was argued by Mr. Brosa in moving to dismiss this claim from the original pleading. (*See* Doc. 71 at 23–24.) But unlike before, Plaintiffs now make clear that they allege this claim as an alternative to their trade secret misappropriation claims and set forth in detail the material that contains confidential information. (*See* FAC ¶¶ 110–18.) At this stage, these allegations are enough to evade the preemptive force of the AUTSA, and discovery will reveal which material, if any, constitutes trade secrets that would fall within the trade secret misappropriation claims as opposed to merely confidential information that would fall within this unfair competition claim. *See Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 549 (Ariz. 2014) ("*Orca II*") ("We do not decide today what aspects, if any, of the confidential information alleged in [the plaintiff's] unfair-competition claim might fall within AUTSA's broad definition of 'trade secret' . . . That determination . . . will depend on discovery and further litigation that has not yet occurred.") (citation omitted).

Next, Apex argues that "Plaintiffs failed to state facts to allege that Apex deliberately usurped Plaintiffs' business relationships or expectancies." (Mem. at 18.) But the Court is not persuaded that such facts are required to state a claim of unfair competition based on misappropriation. "In order to maintain an action for unfair competition under Arizona law, [the plaintiff] must either show that it was engaged in competitive business with [the defendant] or that [the defendant's] actions were likely to produce public confusion." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th

---

[3] While it is currently unclear whether Arizona law recognizes a common law claim for unfair competition based on misappropriation, *Orca II*, 337 P.3d at 549, district courts sitting in Arizona have permitted this claim to proceed, *see, e.g., Joshua David Mellberg LLC*, 96 F. Supp. 3d at 963.

Cir. 1992) (citation modified). Here, Plaintiffs sufficiently allege that they compete with Apex in the same industry and among the same group of customers. (FAC ¶¶ 35–38.)

Still, Plaintiffs must allege sufficient factual matter to state a misappropriation theory upon which they base their unfair competition claim. In Arizona, common law "[m]isappropriation involves the unfair taking for profit, at little or no cost, of property acquired by another through investment of substantial time and money." *Fairway Constructors, Inc.*, 970 P.2d at 957; *see Joshua David Mellberg LLC*, 96 F. Supp. 3d at 985. Apex has already challenged the sufficiency of Plaintiffs' allegations regarding Apex's direct and vicarious liability for misappropriation of trade secrets (that are also, according to Plaintiffs, confidential information), and those arguments apply in equal measures here. As stated above, the Court has found Plaintiffs' allegations as to Apex's direct liability for trade secret misappropriation to be insufficient and will dismiss the unfair competition claim based on the same theory. But for the same reasons also discussed above, Plaintiffs sufficiently allege that Apex is vicariously liable for Mr. Brosa's and Mr. Tankersley's misappropriation, so that portion of this claim may also proceed.

Plaintiffs suggest that new facts have arisen during discovery that may show Mr. Brosa's misappropriation of trade secrets was done in "a coordinated action" with Apex. (Resp. at 10 n.5.) To the extent such facts support Plaintiffs' theory of direct liability for misappropriation as to Apex, the Court will grant Plaintiffs leave to amend their pleading only as to Counts One, Two and Nine based on that theory. But this leave is circumscribed. This matter is already over a year old and Plaintiffs have had two opportunities to adequately state their claims. The case must move forward pursuant to the mandate of Federal Rule of Civil Procedure 1. This Order plainly sets forth what is required in terms of facts required to support direct liability claims. They may offer a Second Amended Complaint only if they can state the necessary additional factual allegations in compliance with their Rule 11 obligations.

. . .

. . .

- 14 -

**IT IS ORDERED** granting in part and denying in part Defendant Apex Imaging Services Notice of Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to F.R.C.P 12(b)(6) (Doc. 79).

**IT IS FURTHER ORDERED** dismissing Counts One and Two against Apex to the extent they are based on a theory of direct liability. Where Counts One and Two against Apex are based on a theory of vicarious liability, those claims may proceed.

**IT IS FURTHER ORDERED** dismissing Count Eight regarding Apex's alleged interference with Plaintiffs' customer relationships and inducement of Mr. Brosa's breach of the non-solicitation clause of his contract. Where Count Eight is based on the inducement of Mr. Brosa's breach of the non-recruitment clause or the confidentiality clause of his contract with Plaintiffs, the claim may proceed.

**IT IS FURTHER ORDERED** dismissing Count Nine against Apex to the extent it is based on a theory of direct liability. Where Count Nine against Apex is based on a theory of vicarious liability, the claim may proceed.

**IT IS FURTHER ORDERED** granting Plaintiffs leave to amend Counts One, Two and Nine to allege additional facts that support a theory of direct liability for misappropriation as to Apex, pursuant to the Court's admonition above. Should Plaintiffs choose to do so, Plaintiffs may file an amended complaint and a separate Notice of Filing Amended Complaint with an attached redlined copy showing the changes between the Complaint and the amendment no later than **ten (10) days** from the date of this Order. No new claims may be added to an amendment absent leave of court pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15.1. To the extent Plaintiffs do not amend their pleading in the time prescribed, Apex shall answer the remaining claims set forth in the First Amended Complaint (Doc. 74) no later than **twenty-one (21) days** from the date of this Order.

Dated this 13th day of July, 2026.

Honorable John J. Tuchi
United States District Judge

- 15 -